IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GUNUP, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>STEVE URVAN,<br><br>　　　　　Defendant. | CIVIL ACTION FILE<br><br>NO.　1:20-cv-02340-LMM<br><br><u>JURY TRIAL DEMANDED</u> |

## <u>FIRST AMENDED COMPLAINT</u>

Plaintiff GunUp, Inc. ("GunUp") hereby alleges for its First Amended

Complaint against Defendant Steve Urvan as follows:

## I.　　THE PARTIES

1.　　GunUp is a Delaware corporation with its principal place of business

in Washington State.  GunUp, Inc. owned a subsidiary, GunUp Publishing, LLC

FIRST AMENDED COMPLAINT　　　1

Savitt Bruce & Willey llp
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

("GP LLC"), a South Dakota limited liability company.  In March 2015, GP LLC was converted to GunUp Publishing, Inc. ("GunUp Publishing"), a Delaware Corporation.  Media Lodge, Inc. ("Media Lodge") then purchased GunUp Publishing pursuant to a merger agreement between Media Lodge, MLA Acquisition Corp. ("MLA"), GunUp Publishing, and GunUp (the "Agreement").  The merger of GunUp Publishing into Media Lodge closed on or about March 31, 2015 (the "Transaction"), as further detailed below.

2.      At all times relevant, Defendant Steve Urvan has been the Chief Executive Officer of IA Tech, LLC, a Delaware limited liability company.  Before the Transaction closed, IA Tech was the sole owner of Media Lodge, LLC ("ML LLC"), a Delaware limited liability company.  Media Lodge's Chief Executive Officer, Jeff Siegel, and Chief Financial Officer, Susan Lokey, have testified at deposition that Mr. Urvan was a member of the board of directors of ML LLC.  In connection with the Transaction, ML LLC was converted to Media Lodge, ML LLC's successor-in-interest.  For at least several years since that conversion, IA Tech was the majority owner of Media Lodge, and Mr. Urvan was a member of the board of directors of Media Lodge.  At all times relevant, Mr. Urvan has directed and been the final decision-maker with respect to the business activities of ML LLC and Media Lodge.  For example, Mr. Urvan has provided

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

direction and made decisions with regard to corporate acquisitions, ML LLC's and Media Lodge's DNS servers and technical engineering priorities, who is designated a corporate officer and what position each such person holds, the hiring and firing of ML LLC and Media Lodge employees, whether or not to pursue legal action, the language of ML LLC's and Media Lodge's press releases, and ML LLC's and Media Lodge's budget and revenue forecasting.  In short, as Ms. Lokey has testified, "ultimately, Steve owns Media Lodge."  Mr. Urvan directed and was the final decision maker with regard to the Transaction.  He was actively involved in Media Lodge's acquisition of GunUp Publishing.  His acts were a substantial factor in bringing about the Transaction, which he materially aided in directing, negotiating and consummating.

## II.   JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action.

4.     This Court has personal jurisdiction over Mr. Urvan because, among other reasons, he is a resident of Georgia, regularly transacts business within Georgia, and/or owns, uses or possesses real property in Georgia.

5.     Venue is proper in this Court because, among other reasons, Mr. Urvan regularly transacted business in Georgia at all times relevant to this dispute.

FIRST AMENDED COMPLAINT            3

## III.   FACTUAL ALLEGATIONS

<u>Media Lodge Solicits GunUp</u>

6.      From December 2013 to the present, GunUp's Chief Executive Officer, Daniel Hall, has operated GunUp from his home in King County, Washington.

7.      Through Mr. Siegel (also a member of the board of directors of ML LLC), ML LLC first contacted Mr. Hall in November 2014, inviting him to "connect" on LinkedIn.com.  After Mr. Hall accepted Mr. Siegel's invitation, Mr. Siegel sent Mr. Hall an email through LinkedIn.com asking to discuss a potential purchase of GP LLC.

8.      In December 2014, Mr. Hall flew to New York City and met with Mr. Siegel to further discuss the potential purchase of GP LLC by ML LLC.

9.      On January 23, 2015, GP LLC; GunUp Gun Sales, LLC ("GunUp Sales"), a South Dakota limited liability company; ML LLC; and GunUp entered into a letter of intent (the "LOI") regarding ML LLC's potential acquisition of GP LLC and GunUp Sales.  Mr. Siegel and Kevin O'Connell, another member of the board of directors of ML LLC, personally negotiated the LOI on behalf of ML LLC, and Mr. Siegel signed it.  A true and correct copy of the LOI is attached hereto as **Exhibit A**.  Exhibit A to the LOI set forth a purchase price of

FIRST AMENDED COMPLAINT          4

"$4,000,000 (Four Million Dollars)," consisting of $1 million in cash and "membership units" in ML LLC equivalent to:

a) Valuation – Media Lodge Valuation of $38,250,000.

b) Percentage Ownership in Media Lodge – GunUp Inc. shall receive membership units equal to 7.8% of the valuation of Media Lodge calculated as follows:  ($3M divided by $38,250,000 ML valuation = 7.8%)

Due Diligence, Execution of the Agreement, and Closing of the Transaction

10.     Over the next several months, the parties systematically and continuously engaged in due diligence and further negotiations.  Mr. Urvan directed the negotiations; Mr. Siegel, Mr. O'Connell and attorney Stanley Moskowitz conducted them; and Ms. Lokey was also involved.

11.     GunUp provided numerous documents and third-party reports to ML LLC and Media Lodge to verify the website traffic on the GunUp blog network, all publisher and advertising revenue agreements, and a detailed accounting of GunUp's books.  The information that GunUp provided to ML LLC and Media Lodge was materially accurate and complete.

12.     By contrast, ML LLC and Media Lodge provided materially inaccurate information to GunUp, and withheld material information from GunUp, as discussed more fully below.

FIRST AMENDED COMPLAINT          5

13.     During the course of negotiations, it was determined that the Transaction would be in the form of a "tri-party merger."  To accomplish the merger, ML LLC was converted to Media Lodge and GP LLC was converted to GunUp Publishing.

14.     Media Lodge, MLA, GunUp Publishing, and GunUp executed the Agreement on or about March 31, 2015.

15.     At closing, Media Lodge purchased GunUp Publishing with a mixture of Media Lodge stock and $1 million in cash, to be paid out over the next several years.  Media Lodge did not purchase GunUp Sales.  However, at Media Lodge's insistence GunUp agreed to wind up and liquidate GunUp Sales, as reflected in Section 5.03 of the Agreement.  A true and correct copy of the Agreement is attached hereto as **Exhibit B**.

16.     After the Transaction closed, GunUp acted in good faith and fully satisfied its obligations under the Agreement.  This included winding up and liquidating GunUp Sales as required by Section 5.03 of the Agreement, which deprived GunUp of a significant ongoing source of revenue.  GunUp fully remedied any and all financial liabilities known or unknown to it at the time of closing.

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

17.     On April 1, 2015, Mr. Hall began working for Media Lodge as its Vice President of Network Development from his home in King County, Washington.

18.     Media Lodge timely made the payments that the Agreement required it to make to GunUp in 2015.

Media Lodge Refuses to Pay the Remaining Amounts Due Under the Agreement

19.     On March 28, 2016, after Media Lodge had fired all the former GunUp employees who had joined Media Lodge following the closing of the Transaction (including Mr. Hall on January 31, 2016), Media Lodge sent GunUp a letter (the "Demand Letter") alleging, among other things, that GunUp had breached certain representations and warranties contained in the Agreement, and that Media Lodge and GunUp Publishing had incurred damages "in excess of $1,000,000," supposedly due to the purported breaches.

20.     At no time during Mr. Hall's employment with Media Lodge, when he reported directly to Mr. Siegel, nor at any time prior to Media Lodge's issuance of the Demand Letter, did Mr. Siegel or anyone else at Media Lodge assert that GunUp had in any way misled Media Lodge, misrepresented anything to Media Lodge, or otherwise violated the representations and warranties contained in the Agreement.

FIRST AMENDED COMPLAINT          7

Savitt Bruce & Willey llp
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

21.     On or about April 19, 2016, GunUp responded to the Demand Letter, denying Media Lodge's allegations and requesting that Media Lodge confirm it would make the contractually obligated payment of $250,000 that was due on May 15, 2016.  Media Lodge did not respond to that request or to subsequent requests from GunUp for assurances that it would make the May 15, 2016 payment.

22.     Media Lodge did not make the May 15, 2016 payment or the May 15, 2017 payment provided for in the Agreement.

23.     Media Lodge did not make the September 2016 stock distribution toward the purchase price for GunUp.

<u>Media Lodge's Material Misrepresentations and Omissions</u>

24.     Prior to execution of the Agreement and closing of the Transaction (including in the LOI), ML LLC and Media Lodge represented to GunUp that ML LLC was worth more than $38 million and GunUp would receive an interest in ML LLC and/or Media Lodge worth approximately $3 million.  Sections 3.08 and 3.17 of the Agreement confirmed these representations by indicating that Media Lodge had capital and owned properties and assets.

25.     Well after the Transaction closed, however, Media Lodge's attorney advised GunUp that GunUp's shares of stock in Media Lodge were worthless.

FIRST AMENDED COMPLAINT          8

26.     GunUp subsequently learned that before the Transaction closed, ML LLC and Media Lodge had provided materially inaccurate information to GunUp and withheld material information from GunUp.  For example:

a.     Although Mr. Siegel told Mr. Hall that ML LLC had the exclusive right to represent affiliated entity GunBroker.com "in perpetuity," Media Lodge did not disclose that it only had an oral agreement with GunBroker that GunBroker could cancel at any time.

b.     Media Lodge did not disclose that all advertising revenue earned by ML LLC in 2014 had been deposited into GunBroker's bank account, or that before the Transaction closed GunBroker had not transferred any of these payments into Media Lodge's bank account.

c.     Media Lodge did not disclose that except for $25 required to open Media Lodge's only bank account, every deposit into the account prior to closing of the Transaction had been a loan from an affiliated entity to fund operational shortfalls at Media Lodge.

FIRST AMENDED COMPLAINT          9

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

d.   Media Lodge did not disclose that it owed its only member, IA Tech LLC, $770,517.75 as of December 31, 2014, and $1,330,557 as of March 31, 2015, when the Agreement was signed. Media Lodge did not disclose that it owed this debt pursuant to a March 31, 2015 promissory note (executed by Mr. Urvan on behalf of IA Tech and Mr. Siegel on behalf of ML LLC) that allowed IA Tech to call its loan whenever it wished.

e.   In response to a request by GunUp for "Media Lodge's 2014 financials," ML LLC passed off as "the Media Lodge 2014 P&L" an incomplete "interim" profit and loss statement that omitted approximately $1 million in costs.

f.   Media Lodge included in the Agreement a provision (Section 3.08) falsely indicating that it had minimal liabilities and infrequent shortfalls in capital.

g.   Media Lodge did not disclose that all of its intellectual property (even its brand name and the medialodge.com domain) was owned by an affiliated entity and was licensed to Media Lodge pursuant to an agreement (executed by Mr. Urvan on behalf of

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

affiliate S&T Tech, LLC and ML LLC) that was cancelable at any time.

27.     Mr. Urvan participated in the foregoing misrepresentations, had knowledge of them, and/or directed that they be made to GunUp by Mr. Siegel and Media Lodge.

*GunUp v. Media Lodge*

28.     On June 23, 2016, GunUp sued Media Lodge in King County, Washington Superior Court (the "Washington Lawsuit").  On October 23, 2017, Media Lodge amended its complaint in the Washington Lawsuit to add claims under the Washington State Securities Act ("WSSA"), RCW ch. 21.20, against Media Lodge and several other defendants, including Mr. Siegel and Mr. Urvan.

29.     GunUp based its WSSA claims in the Washington Lawsuit on two key facts:  Media Lodge had told GunUp before the Transaction closed that GunUp would receive shares of stock in Media Lodge worth $3 million, and Media Lodge's attorney had told GunUp several years after the Transaction closed that the shares of Media Lodge stock GunUp had received were worthless. Although it was possible for GunUp to infer from these facts that Media Lodge had misrepresented the value of its stock to GunUp before the Transaction closed, GunUp had not discovered facts showing that such misrepresentations had

Savitt Bruce & Willey llp
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

actually been made, or facts showing that Mr. Urvan had known or should have known about any such misrepresentations.

30.     Media Lodge did not produce documents evidencing its misrepresentations until months later in 2018.  Media Lodge never produced documents or other evidence establishing that Mr. Urvan knew about the misrepresentations.  Although Media Lodge stated in its answers to interrogatories that Mr. Urvan had been "actively involved in the negotiation and consummation of" the Transaction, Media Lodge's witnesses attempted to minimize his involvement during their depositions in July and August 2018.  It was not until November 2018 that GunUp obtained intelligence informally from a third party supporting the conclusions that (a) Mr. Urvan had known or should have known about Media Lodge's pre-Transaction misrepresentations and omissions, and (b) Media Lodge, which Mr. Urvan controlled, had concealed relevant documents and information in the Washington Lawsuit, partly in an effort to protect Mr. Urvan.

31.     Media Lodge's attorney accepted service for Mr. Siegel in the Washington Lawsuit.  Mr. Urvan was not served with process and did not appear as a party in the Washington Lawsuit.  However, he was in privity with Media

Savitt Bruce & Willey llp
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

Lodge and Mr. Siegel because he controlled the litigation and because Media Lodge and Mr. Siegel fully and adequately represented his interests.

32. On October 26, 2018, the King County Superior Court entered an order granting summary judgment in favor of GunUp and against Media Lodge and Mr. Siegel on GunUp's WSSA claims (the "SJ Order"). The SJ Order stated in relevant part:

> As a matter of law, Media Lodge and Mr. Siegel made material misrepresentations to GunUp and failed to disclose material information to GunUp.

> As a matter of law, Media Lodge and Mr. Siegel are liable to GunUp for violating the Washington State Securities Act ("WSSA"), RCW 21.20.010(2), (3) and RCW 21.20.430(1), (3).

33. After a trial on damages, the King County Superior Court entered a judgment in favor of GunUp and against Media Lodge and Mr. Siegel (the "Judgment") "in the principal amount of $911,000.00 ($1,411,000.00 less $500,000.00 previously paid by Media Lodge to GunUp), plus prejudgment interest (at eight percent per annum) in the amount of $329,852.49 pursuant to RCW 21.20.430(1) and (3), plus reasonable attorneys' fees and costs pursuant to RCW 21.20.430(1) (to be determined upon separate application)." GunUp's motion for an award of attorneys' fees and costs is presently pending before the King County Superior Court. The Judgment remains unpaid.

FIRST AMENDED COMPLAINT          13

# IV.  CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### (Violation of the Washington State Securities Act)

34.     GunUp re-alleges and incorporates paragraphs 1 through 33 as if fully set forth herein.

35.     RCW 21.20.010 provides:

It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:

> (1)     To employ any device, scheme, or artifice to defraud;
>
> (2)     To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
>
> (3)     To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

36.     RCW 21.20.430 provides in relevant part:

(1) Any person, who offers or sells a security in violation of any provisions of RCW 21.20.010 … is liable to the person buying the security from him or her, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at eight percent per annum from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he or she no longer owns the security.  Damages are the amount that would be recoverable upon a tender less (a) the value of the security when

FIRST AMENDED COMPLAINT          14

the buyer disposed of it and (b) interest at eight percent per annum from the date of disposition.

* * *

(3) Every person who directly or indirectly controls a seller or buyer liable under subsection (1) … above, every partner, officer, director or person who occupies a similar status or performs a similar function of such seller or buyer, [and] every employee of such a seller or buyer who materially aids in the transaction … is also liable jointly and severally with and to the same extent as the seller or buyer, unless such person sustains the burden of proof that he or she did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.  There is contribution as in cases of contract among the several persons so liable.

37.     Mr. Urvan's actions as set forth herein violated RCW 21.20.010.

Before the Transaction closed, Mr. Urvan participated in the making of material misrepresentations to GunUp regarding ML LLC and Media Lodge, participated in Media Lodge's failure to disclose material information to GunUp regarding ML LLC and Media Lodge, and/or directed, was a substantial factor in, or materially aided in the making of material misrepresentations to GunUp and the withholding of material information from GunUp regarding ML LLC and Media Lodge.  Mr. Urvan was a director of ML LLC and Media Lodge at the time of the misrepresentations and omissions, and directly or indirectly controlled ML LLC and Media Lodge.  He knew, or in the exercise of reasonable care should have known, of the existence of the facts by reason of which Media Lodge has already been held liable to GunUp.

FIRST AMENDED COMPLAINT          15

38.     GunUp relied to its financial detriment on the material misrepresentations and omissions set forth herein.

39.     Mr. Urvan is liable to GunUp under RCW 21.20.430(1) and/or RCW 21.20.430(3).

SECOND CAUSE OF ACTION

(Fraud)

40.     GunUp re-alleges and incorporates paragraphs 1 through 39 as if fully set forth herein.

41.     Prior to and in connection with the Transaction, Media Lodge made material misrepresentations to GunUp regarding ML LLC and Media Lodge, and failed to disclose material information to GunUp regarding ML LLC and Media Lodge regarding ML LLC and Media Lodge.

42.     Media Lodge knew that its representations to GunUp were false.

43.     Media Lodge had a duty to disclose to GunUp the information that Media Lodge withheld.

44.     Media Lodge's misrepresentations and omissions were material, in that they informed GunUp's decision to go through with the Transaction.

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

45.     GunUp relied on Media Lodge's misrepresentations and omissions regarding ML LLC and Media Lodge when GunUp decided to go through with the Transaction.  GunUp's reliance was reasonable and justifiable.

46.     GunUp has been damaged as a direct and proximate result of Media Lodge's material misrepresentations and omissions and GunUp's justifiable reliance thereon.

47.     Mr. Urvan, a member of the board of directors of ML LLC and Media Lodge, participated in Media Lodge's material misrepresentations and omissions to GunUp regarding ML LLC and Media Lodge, and/or directed, was a substantial factor in, or materially aided in the making of such material misrepresentations to GunUp and the withholding of material information from GunUp regarding ML LLC and Media Lodge.  Mr. Urvan is therefore liable to GunUp for the damages that GunUp has suffered as a result of the misrepresentations and omissions.

## V.     PRAYER FOR RELIEF

WHEREFORE, GunUp prays for the following relief:

1.     That the Court enter judgment in favor of GunUp and against Mr. Urvan on GunUp's claims.

2.     That the Court award GunUp damages.

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

3.     That the Court award GunUp prejudgment interest.

4.     That the Court award GunUp its attorneys' fees and costs incurred herein.

5.     That the Court grant GunUp all other relief that the Court deems just and proper.

## VI.     DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, GunUp demands trial by jury in this action of all issues so triable.

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

DATED: June 22, 2020.

**MOORE INGRAM JOHNSON & STEELE, LLP**

By: _/s/ Robert D. Ingram_

    Robert D. Ingram, Georgia Bar No.: 383405
    David P. Conley, Georgia Bar No.: 141760
    Attorneys for Plaintiff GunUp, Inc.
    326 Roswell Street, Suite 100
    Marietta, GA 30060
    Telephone: (770) 429-1499
    Facsimile: (770)429-8631
    Email: ringram@mijs.com
    Email: dpconley@mijs.com

**SAVITT BRUCE & WILLEY LLP**

By: _/s/ Duncan E. Manville_

    Duncan E. Manville
    (Pending Admission _Pro Hac Vice_)
    Patrick D. Moore
    (Pending Admission _Pro Hac Vice_)
    Attorneys for Plaintiff GunUp, Inc.
    1425 Fourth Avenue, Suite 800
    Seattle, WA 98101-2272
    Telephone: (206) 749-0500
    Facsimile: (206) 749-0600
    Email: dmanville@sbwllp.com
    Email: pmoore@sbwllp.com

FIRST AMENDED COMPLAINT    19

# <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), the undersigned counsel hereby certifies that this document was prepared with a computer using double-spaced lines, and Times New Roman font, size 14, in accordance with Local Rule 5.1(C).

DATED:  June 22, 2020.

MOORE INGRAM JOHNSON & STEELE, LLP

By: ___*/s/ Robert D. Ingram*___
  Robert D. Ingram, Georgia Bar No.: 383405
  David P. Conley, Georgia Bar No.: 141760
  Attorneys for Plaintiff GunUp, Inc.
  326 Roswell Street, Suite 100
  Marietta, GA 30060
  Telephone: (770) 429-1499
  Facsimile:  (770)429-8631
  Email: ringram@mijs.com
  Email: dpconley@mijs.com


SAVITT BRUCE & WILLEY LLP

By: ___*/s/ Duncan E. Manville*___
  Duncan E. Manville
  (Pending Admission *Pro Hac Vice*)
  Patrick D. Moore
  (Pending Admission *Pro Hac Vice*)
  Attorneys for Plaintiff GunUp, Inc.
  1425 Fourth Avenue, Suite 800
  Seattle, WA 98101-2272
  Telephone: (206) 749-0500
  Facsimile: (206) 749-0600
  Email: dmanville@sbwllp.com
    pmoore@sbwllp.com

# **CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2020, I electronically filed this First

Amended Complaint with the Clerk of Court using the CM/ECF system which

will automatically send email notification of such filing to the following attorneys

of record:

Mr. Jeffrey D. Horst, GBN: 367834          ☒Via E-Filing
Mr. Josh I. McLaurin, GBN: 169227          ☐Via Legal Messenger
Krevolin & Horst, LLC                      ☒Via Email
1201 W. Peachtree St., NW                  ☐Via U.S. Mail
Suite 3250, One Atlantic Center            ☐Via Fax
Atlanta, GA 30309
Telephone:  (404) 888-9700
Email:  horst@khlawfirm.com
           mclaurin@khlawfirm.com

*Attorneys for Defendant Steve Urvan*

DATED this 22nd day of June, 2020.

　　　　　　　　　　　　　　　　　　_____/s/ David P. Conley_____
　　　　　　　　　　　　　　　　　　David P. Conley

CERTIFICATE OF SERVICE